UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LION RAISINS, INC.,<br><br>                    Plaintiff,<br><br>    v.<br><br>UNITED STATES DEPARTMENT OF AGRICULTURE,<br><br>                    Defendant. | 1:05-CV-00640 OWW-SMS<br><br>MEMORANDUM DECISION RE GRANTING IN PART AND DENYING IN PART CROSS-MOTIONS FOR SUMMARY JUDGMENT (DOC. 36, 41) |

## 1.  INTRODUCTION

Plaintiff Lion Raisins, Inc. ("Lion") seeks review of a Decision and Order issued by the USDA Judicial Officer on its petition challenging provisions of the California raisin marketing order.  Lion initiated this case in federal court by filing a complaint pursuant to section 608c(15)(B) of the Agricultural Marketing Agreement Act of 1937, 7 U.S.C. § 601 *et seq*. ("AMAA") and the Administrative Procedure Act, 5 U.S.C. § 702-706 ("APA").  This case arises from the administration of a federal California raisin marketing order, enacted under the authority of the AMAA, which regulates raisins in the California raisin marketing area. *See* 7 C.F.R. § 989.1 –.801*.* ("Raisin Marketing Order").

Lion challenges the ruling of the USDA Judicial Officer ("Judicial Officer" or "JO") who affirmed, but did not adopt, the decision of the Administrative Law Judge ("ALJ"), granting USDA's

1

1  motion to dismiss Lion's November 10, 2004 petition ("November

2  Petition"), and USDA's motion to strike the amended petition,

3  filed February 9, 2005 ("February Amended Petition"), finding the

4  February Amended Petition premature.  The Judicial Officer also

5  dismissed the November Petition with prejudice.  Currently before

6  the court are USDA's Motion for Summary Judgment and Lion's

7  Cross-Motion for Summary Judgment.  Oral argument was heard on

8  February 25, 2008.

9                    2.   PROCEDURAL BACKGROUND

10  A. Administrative Record

11      1.   Lion initiated proceedings on November 10, 2004, by

12  filing the November Petition with the USDA pursuant to section

13  608c(15)(A) of the AMAA. (Doc. 43, Administrative Records, 2005

14  AMA Docket No. F&V 989-1, submitted by Defendant in Support of

15  Motion for Summary Judgment ("AR 2005"), Tab 1.)

16      2.   On December 29, 2004, Defendant USDA filed a Motion to

17  Dismiss the November Petition. (Doc. 43, AR 2005, Tab 5.)

18      3.   On February 9, 2005, Plaintiff filed the February

19  Amended Petition. (Doc. 43, AR 2005, Tab 9.)

20      4.   On February 14, 2005, Defendant filed a Motion to Strike

21  the February Amended Petition. (Doc. 43, AR 2005, Tab 11.)

22      5.   On March 7, 2005, the ALJ issued an order dismissing the

23  November Petition, striking the February Amended Petition as

24  premature, and granting Lion an opportunity to file an amended

25  petition within twenty (20) days. (Doc. 43, AR 2005, Tab 13.)

26      6.   On March 11, 2005, USDA appealed the ALJ decision,

27  seeking dismissal of the November Petition with prejudice and

28  opposing the decision to permit Lion to file an amended petition.

                                2

**(Doc. 43, AR 2005, Tab 15.)**

**7.   On March 24, 2005, Lion re-filed the February Amended Petition ("Re-Filed Amended Petition") pursuant to the March 7, 2005 Order. (Doc. 43, AR 2005, Tab 17.)**

**8.   On March 30, 2005, Lion filed a response to USDA's appeal petition. (Doc. 43, AR 2005, Tab 19.)**

**9.   On March 30, 2005, USDA filed a Motion to Strike the Re-Filed Amended Petition. (Doc. 43, AR 2005, Tab 20.)**

**10.   On April 21, 2005, Lion Raisin filed an opposition to USDA's Motion to Strike the Re-Filed Amended Petition. (Doc. 43, AR 2005, Tab 22.)**

**11.   On April 25, 2005, the Judicial Officer dismissed the November Petition with prejudice, finding it was barred by *res judicata*, technical deficiencies, and failure to present a cognizable claim.  The Judicial Officer also struck the February Amended Petition as premature, because it was filed before the March 7, 2005 ALJ Order. (Doc. 43, AR 2005, Tab 24.)   The Judicial Officer did not rule on the Re-filed Amended Petition.**

**12.   On May 3, 2005, the ALJ dismissed the Re-Filed Amended Petition (filed in March 2005). (Doc. 43, AR 2005, Tab 26.)**

**13.   On June 3, 2005, Lion filed an appeal to the Judicial Officer from the ALJ May 3, 2005 Order dismissing the Re-Filed Amended Petition (filed in March 2005).**

**14.   On June 27, 2005, USDA filed a response to Lion's petition for appeal. (Doc. 43, AR 2005, Tab 29.)**

**15.   On July 13, 2005, the Judicial Officer struck Lion's Re-Filed Amended Complaint (filed in March 2005). (Doc. 43, AR 2005, Tab 32.)**

**3**

**B.   Federal Court**

     **1.   On May 16, 2005, Lion filed a complaint for judicial review of the Judicial Officer's April 25, 2005 Decision and Order, dismissing with prejudice the November Petition and striking the February Amended Petition. (Doc. 1, Complaint.)**

     **2.   On August 10, 2005, USDA filed an Amended Answer to Complaint. (Doc. 13, Answer.)**

     **3.   On April 24, 2007, USDA filed a Motion for Summary Judgment. (Doc. 36, USDA's MSJ.)**

     **4.   On April 25, 2007, Lion filed a Cross-Motion for Summary Judgment. (Doc. 42, Lion's Cross-MSJ.)[1]**

     **5.   On May 24, 2007, USDA filed an opposition to Lion's Cross-MSJ. (Doc. 46, USDA Opposition.)**

     **6.   On May 24, 2007, Lion filed an opposition to USDA's MSJ. (Doc. 47, Lion Opposition.)**

**3.   FACTUAL HISTORY**

---

     [1] **On April 26, 2007, Lion filed an application for late filed documents as to Plaintiff's Cross-Motion for Summary Judgment pursuant to F.R.C.P. Rule 6(b), L.R. 5-135(c) and L.R. 6-144(d). (Doc. 45, Application.)  The deadline to file cross-motions for summary judgment was April 24, 2007.  Plaintiff had attempted to electronically file its motion for summary judgment on April 24, 2007 but encountered a technical failure and inadvertently filed a wrong version of the motion in its rush to address the technical failure.  Upon Plaintiff's notice that it filed the incorrect version of the motion, it promptly filed an *Errata* on April 25, 2007, and informed opposing counsel who agreed the filing would be unopposed.  Plaintiff filed the application for acceptance of late filing thereafter on April 26, 2007. (Doc. 45, Application.)  Finding no prejudice to the parties, the Court GRANTS the requested extension of time is GRANTED through April 25, 2007 for Plaintiff to file the cross-motion for summary judgment *Errata* and its supporting documents.**

1    Lion Raisins, Inc., (or Lion), is a California corporation,
2    that purchases raisins in the State of California which are then
3    processed and packed for sale in intrastate, interstate and
4    foreign commerce for human consumption.  Lion also produces its
5    own raisins, performing the same processing functions.  Lion is
6    considered a handler of California Raisins.[2]

7    The AMAA delegates authority to the Secretary of the United
8    States Department of Agriculture to issue marketing orders, upon
9    the request of producers, regulating the sale and delivery of
10   various commodities, including raisins, "in order to avoid
11   unreasonable fluctuations in supplies and prices." *Kyer v. U.S.*,
12   369 F.2d 714, 717, 177 Ct.Cl. 747 (1966) *cert. denied* 387 U.S.
13   929 (1967); 7 U.S.C. § 608c, 602(4) (2000).  "The AMAA was
14   originally enacted during the Depression, with the objective of
15   helping farmers obtain a fair value for their agricultural
16   products." *Lion Raisins, Inc. v. U.S.*, 416 F.3d 1356, 1358
17   (Fed.Cir. 2005).  "The Act contemplates a cooperative venture
18   among the Secretary, handlers, and producers the principal
19   purposes of which are to raise the price of agricultural products
20   and to establish an orderly system for marketing them." *Block v.*
21   *Community Nutrition Institute*, 467 U.S. 340, 346 (1984).  The
22   principal mechanism is through the implementation of marketing
23   orders.

24   The marketing order for the California raisin market, the
25   Raisin Marketing Order, was promulgated in 1960 under Parts §§

26

27
        [2] **(Doc. 46-2, Plaintiff's Statement of Undisputed Facts,**
28   **(PSUDF), No. 1-2)**

989.1-989.801, covering the region of the State of California.   7 C.F.R. § 989.1-.801.   Before a marketing order is issued under the AMAA, the Secretary must give notice and an opportunity for a hearing upon the contemplated marketing order. 7 U.S.C. § 608c(3),(4).   Under 7 U.S.C. § 608c(7)(C)(i)-(iv), the Secretary can delegate the responsibility of implementing the Raisin Marketing Order to marketing committees and to empower the marketing committees to issue rules and regulations.   The Raisin Administrative Committee (RAC), appointed by the USDA, is the committee charged with overseeing and administering the Raisin Marketing Order. 7 C.F.R. § 989.35(a),(b).   The RAC is composed of 47 members, the majority from the raisin production industry, including 35 producers and 10 handlers, in addition to one member from the public and one member from the industry's collective bargaining association. 7 C.F.R. § 989.26.

Part 989.58(d) and .59(d) requires "handlers" of California raisins to "cause" an "inspection and certification...of all natural condition raisins..." for both incoming and outgoing raisins. 7 C.F.R. § 989.58(d) and § 989.59(d).

The inspections of raisins generally are governed pursuant to the authority of the USDA under the Agricultural Marketing Act of 1946, as amended. 7 U.S.C. § 1621, *et seq.* ("AMA").   The USDA has issued regulations under Title 7, Part 52 ("Part 52") pursuant to its authority under the AMA governing the inspection and certification of certain agricultural products, including raisins, and has established standards for grades of commodities, including raisins. 7 C.F.R. § 52.5.   Section 52.5 states that "[a]n application for inspection service may be made by any

interested party..." 7 C.F.R. § 52.5.

The Agricultural Marketing Service ("AMS") is in charge of administering the inspection regulations, including providing inspection services to any applicant in accordance with the regulations established pursuant to the AMA and the AMAA. It is undisputed in this suit that Lion exhausted its administrative remedies.[3]

---

[3] **Plaintiff Lion's Statement of Undisputed Facts also states facts regarding its contention that the USDA's interpretation and application of Part 989 provisions concerning who can cause "an inspection and certification" under the Raisin Marketing Order is arbitrary, an abuse of discretion and not otherwise in accordance with the law. The USDA has interpreted Part 989 provisions regarding "who" causes an inspection of incoming and outgoing raisins to mean only the "handler" of raisins.**

**Lion, a handler, disputes this interpretation of Part 989.58(d) and 989.59(d) provisions and claim it is not only "handlers" that can "cause" an "inspection and certification" of raisins. Lion contends that the "growers," the front-end of the raisin process, or the "packers," the back-end of the raisin process, can "cause an inspection and certification" of raisins. Lion provides facts to support its contention that the provision requiring handlers to "cause an inspection and certification" should be interpreted to mean that handlers can apply for inspection services directly *or compel another interested party to apply*, namely growers of natural condition raisins and buyers of packed raisins. However, while these facts are informative, the Judicial Officer's April 25, 2005 Decision and Order did not reach the merits of Lion's petition and dismissed the petition on *res judicata* grounds and failure to comply with the Rules of Practice. The Court is limited to reviewing the decision and evidence before the Judicial Officer. In addition, the Judicial Officer's decision granted USDA's Motion to Strike on the basis that the February Amended Petition was premature. The Judicial Officer Decision and Order did not address the underlying merits of the petition and therefore there is no decision in the administrative record determining whether Lion, as the handler, is the only party that can "cause" an inspection and certification.**

**4. STANDARD OF REVIEW**

**A. Motion for Summary Judgment**

Summary judgment is warranted only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact." Fed. R. Civ. P. 56(c); *California v. Campbell*, 138 F.3d 772, 780 (9th Cir. 1998). To defeat a motion for summary judgment, the non-moving party must show (1) that a genuine factual issue exists and (2) that this factual issue is material. *Id.* A genuine issue of fact exists when the non-moving party produces evidence on which a reasonable trier of fact could find in its favor viewing the record as a whole in light of the evidentiary burden the law places on that party. *See Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252-56 (1986). Facts are "material" if they "might affect the outcome of the suit under the governing law." *Campbell*, 138 F.3d at 782 (quoting *Anderson*, 477 U.S. at 248).

The nonmoving party cannot simply rest on its allegations without any significant probative evidence tending to support the complaint. *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001). [T]he plain language of Rule 56(c) mandates the entry of

---

Defendant USDA opposes Lion's Undisputed Statement of Facts arguing that only the facts in the administrative record are undisputed for purposes of review of this matter. (Doc. 46, Defendant's Response to Plaintiff's Undisputed Facts) Therefore, Lion's facts concerning the 989.58(d) and 989.59(d) provisions re: "cause an inspection and certification" are omitted from the factual section.

summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial.  In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. *Celotex Corp. v. Catrell*, 477 U.S. 317, 323 (1986).  The more implausible the claim or defense asserted by the nonmoving party, the more persuasive its evidence must be to avoid summary judgment. *See United States ex rel. Anderson v. N. Telecom, Inc.*, 52 F.3d 810, 815 (9th Cir. 1996). Nevertheless, the evidence must be viewed in a light most favorable to the nonmoving party. *Id.*; *Anderson*, 477 U.S. at 255. A court's role on summary judgment is not to weigh evidence or resolve issues; rather, it is to determine whether there is a genuine issue for trial. *See Abdul-Jabbar v. G.M. Corp.*, 85 F.3d 407, 410 (9th Cir. 1996).

**B. Agency Action**

The starting point for judicial review of agency action is the administrative record already in existence, not a new record made initially in the reviewing court. *Camp v. Pitts,* 411 U.S. 138, 142 (1973)*; Southwest Center for Biological Diversity v. U.S. Forest Service*, 100 F.3d 1443, 1450 (9th Cir. 1996).  The court may, however, consider evidence outside the administrative record for certain limited purposes, *e.g.*, to explain the agency's decisions, *Southwest Center,* 100 F.3d at 1450; or to determine whether the agency's course of inquiry was insufficient

or inadequate. *Love v. Thomas*, 858 F.2d 1347, 1356 (9th Cir. 1988), *cert. denied*, 490 U.S. 1035 (1989); *Animal Defense Council v. Hodel*, 840 F.2d 1432, 1436 (9th Cir. 1988).  In addition, a court, in certain instances, may require supplementation of the record or allow a party challenging agency action to engage in limited discovery. *Southwest Center*, 100 F.3d at 1450.[4]

C. Procedures for Review of Agency Action under the AMAA

     Under the AMAA, handlers may petition the Secretary for relief from any provision of a marketing order believed *not to be in accordance with the law*. 7 U.S.C. § 608c(15)(A)(emphasis added).

     Any handler subject to an order may file a written petition with the Secretary of Agriculture, stating that any such order or any provision of any such order or any obligation imposed in connection therewith is not in accordance with law and may seek a modification of or to be exempted from that order.  The handler shall thereupon be given an opportunity for a hearing upon such

─────────────────────

     [4] In *Public Power Council v. Johnson*, 674 F.2d 791 (9th Cir. 1982), the Ninth Circuit isolated four circumstances where supplementation or discovery may be justified:

> (1) when the record need be expanded to explain agency action;
> (2) when the agency has relied upon documents or materials not included in the record;
> (3) to explain or clarify technical matter involved in the agency action; and
> (4) where there has been a strong showing in support of a claim of bad faith or improper behavior on the part of the agency decision makers.

674 F.2d at 793-94.  Supplementation of an administrative record is the exception, not the rule.

petition, in accordance with regulations made by the Secretary of Agriculture, with the approval of the President.  After such hearing, the Secretary shall make a ruling upon the prayer of such petition which shall be final, if in accordance with law. 7 U.S.C. § 608c(15)(A).  The Rules of Practice Governing Procedures on Petitions  to Modify or to Be Exempted from Marketing Order apply to petitions filed under § 608c(15)(A). 7 C.F.R. § 900.50-64.

Such a petition is first heard by the ALJ.  A handler may appeal any ALJ decision to the Judicial Officer of the USDA. After the Judicial Officer issues a decision, a handler, under Section 608c(15)(B), may appeal any Judicial Officer decision to the district court in the district in which handler is an inhabitant or has a principal place of business.  The statute limits the district court's review to the following:

> If the court determines that such ruling is not in accordance with law, it shall remand such proceedings to the Secretary with directions either (1) to make such ruling as the court shall determine to be in accordance with law, or (2) to take such further proceedings as, in its opinion, the law requires.

7 U.S.C. § 608c(15)(B).  The Administrative Procedure Act has been applied in prior Ninth Circuit cases concerning challenges to Marketing Orders under § 608c(15)(B) to the marketing orders. *See e.g. Cal-Almond, Inc. v. United States Dep't Agric.*, 14 F.3d 429, 444 (9th Cir. 1993) (challenge to the California almond marketing order).

## 5.  DISCUSSION

Plaintiff's Complaint contains a single claim for, declaratory relief from the Judicial Officer's April 25, 2005

11

Decision and Order striking Plaintiff's February 9, 2005 Amended

Petition, (February Amended Petition), and dismissing with

prejudice Plaintiff's November 10, 2004 Petition, (November

Petition). Plaintiff's cause of action is as follows:

24. The JO's decision and order of April 25, 2005, is arbitrary, capricious, and not in accordance with law. 7 U.S.C. § 608c(15)(A) allows a handler subject to an order (which Lion is) to file an administrative petition with the secretary alleging that any such order or any provision of any such order or any obligation imposed in connection therewith is not in accordance with law "and praying for a modification thereof or to be exempted therefrom." That section also provides that the handler "shall thereupon be given an opportunity for a hearing upon such petition, in accordance with regulations made by the Secretary of Agriculture . . . [and that] after such hearing, the Secretary shall make a ruling upon the prayer of such petition which shall be final, it in accordance with law."

25. The Judicial Officer did not permit a hearing in this matter. The Judicial Officer arbitrarily and capriciously held that the petition should be dismissed with prejudice, as opposed to without prejudice.

26. The JO's decision was arbitrary, capricious, and not in accordance with law because the Judicial Officer claimed that: (1) Lion's petition was barred by res judicata and should have been dismissed with prejudice because of a previous petition that was dismissed was erroneous; (2) Lion did not comply with the requirement of the rules of practice requiring the petition to contain the names, addresses and respective positions held by the corporate officers of Lion (a mere formality easily correctable); (3) Lion failed to specifically allege which "corollary" raisin order terms and/or provisions Lion was challenging (not true or irrelevant); and (4) none of Lion's claims can be adjudicated in an administrative petition proceeding because Lion does not make a "legally-cognizable claim" because Lion is complaining about matters that cannot be adjudicated in an administrative petition proceeding setting – which is not true.

27. The JO's decision was arbitrary, capricious and not in accordance with law. The JO's decision was further arbitrary and capricious when the JO struck the amended petition, and dismissed the petition with prejudice instead of allowing Lion to amend the petition to clear-up any problems the JO had. The decision was also

12

arbitrary, capricious and not in accordance with law since the matters complained of by Lion can be adjudicated pursuant to the administrative petition proceedings, because the claims were that the marketing order provisions and the obligations imposed in connection therewith were not in accordance with law, and requesting a modification thereof or to be exempted therefrom.

28. This matter must be decided on the merits, after a hearing. Under the APA, this JO's decision now must be decided on the administrative record.

(Doc. 1, Complaint, ¶¶ 24-28)

In sum, Plaintiff's Complaint alleges that the Judicial Officer's decision is arbitrary, capricious and not in accordance with the law for the following reasons:

- JO did not permit a hearing on the matter;

- JO found the petition was barred by *res judicata* and dismissed it with prejudice;

- JO found that Plaintiff failed to comply with the required rules of practice requiring the petition to contain the names, addresses and respective decisions held by Plaintiff's corporate officers;

- JO found Plaintiff failed to specifically allege which "corollary" Raisin Order terms and/or provisions Plaintiff was challenging;

- JO found Plaintiff's claims cannot be adjudicated in an administrative petition proceeding as there are no "legally-cognizable claims" that can be adjudicated in such proceeding; and

- JO struck the amended petition and failed to permit Plaintiff to amend the petition to clear any issues in accordance with the Judicial Officer's order.

Defendant moves for summary judgment claiming the record contains substantial evidence to demonstrate the USDA's decision was in accordance with the law:

- USDA was not required to hold a hearing on Plaintiff's petition.

- Plaintiff's claims were previously adjudicated by

13

1          the USDA;

2          •    The claims in Plaintiff's November Petition are
                identical to those in the petition filed by Lion
3               on September 10, 2003, the September Petition, and
                are therefore barred by the doctrine of *res*
4               *judicata* and the USDA properly dismissed the
                petition;
5
           •    Plaintiff did not seek judicial review of the
6               prior October 19, 2004 Decision and Order on the
                September Petition and instead filed a separate
7               petition alleging the same complaints; and

8          •    USDA correctly struck Plaintiff's February Amended
                Petition since it was indisputably filed in
9               violation of the Rules of Practice.

10   (Doc. 36, USDA's MSJ, p. 2:1-11)

11         Plaintiff cross-moves for summary judgment and seeks an

12   order relieving Plaintiff from certain obligations imposed under

13   the Raisin Marketing Order, or in the alternative seeks an order

14   to remand this case to the USDA with instructions to hold an

15   administrative hearing on Plaintiff's petition.  Plaintiff also

16   provides the history of the larger dispute between Plaintiff and

17   USDA over inspection services.  It is unnecessary to re-state the

18   alleged acrimonious history as the merits of that dispute are not

19   at issue in either of the motions for summary judgment.

20         Lion's cross-motion for summary judgment, requests the Court

21   issue an order relieving it from obligations imposed under the

22   Raisin Marketing Order, specifically that Plaintiff:

23              (1) can comply with the incoming and outgoing
                inspection obligations of the Raisin Marketing Order by
24              "causing" its grower (for incoming) and customer (for
                outgoing) to apply for inspections from the USDA; or
25
                (2) can have inspection services performed by a non-
26              USDA agency such as the well-recognized Dried Fruit
                Association; or in the alternative
27
                (3) can comply with all applicable rules and
28              regulations, and require the USDA to provide an

                                14

1          adequate number of inspectors consistent with
           Plaintiff's obligation to pay for these services under
2          the Raisin Marketing Order.

3   (Doc. 37, Lion's Cross-MSJ, pp. 27:22-28:10)

4        The Judicial Officer did not address any relief requested by

5   Plaintiff, because the petition was dismissed before its merits

6   were adjudicated.  The Judicial Officer found Plaintiff's

7   November Petition barred by *res judicata* based on its similarity

8   to a previously filed petition, and dismissed the November

9   Petition on *res judicata* grounds with prejudice, and also

10  dismissed the petition because Plaintiff failed to comply with

11  the Rules of Practice, specifically: section 900.52(b)(1)

12  requiring that a petition contain the names, addresses, and

13  respective positions held by corporate petitioner's officers;

14  section 900.52(b)(2) requiring each petition to contain a

15  reference to the specific terms or provisions of the marketing

16  order, or the interpretation or application of the marketing

17  order, about which the petitioner complains; and section

18  900.52(b)(4) requiring each petition contain a statement of

19  grounds upon which the terms or provisions of the marketing

20  order, or the interpretation or application of the marketing

21  order, are challenged as not in accordance with law.

22       Specifically, the November Petition was dismissed with

23  prejudice upon the Judicial Officer's finding that the petition

24  was barred on *res judicata* grounds and the petition failed to "to

25  state a legally-cognizable claim" because it challenged

26  inspection obligations under the raisin marketing order, which

27  the Judicial Officer found to be a matter of policy,

28  desireability and a challenge to the effectiveness of the order

provisions.   The Judicial Officer found proceedings under **AMAA** section 8c(15)(A) (7 U.S.C. § 608c(15)(A) did not afford relief for such claims.

A district court's review of a Judicial Officer's Decision and Order is limited to a review of whether the Judicial Officer's Decision and Order is "in accordance with the law."

> The District Courts of the United States in any district in which such handler is an inhabitant, or has his principal place of business, are hereby vested with jurisdiction in equity to review such ruling... If the court determines that such ruling is not in accordance with law, it shall remand such proceedings to the Secretary with directions either (1) to make such ruling as the court shall determine to be in accordance with law, or (2) to take such further proceedings as, in its opinion, the law requires.

7 U.S.C. § 608c(15)(B).

Judicial review of the agency action is also limited to the administrative record in existence and Plaintiff has provided no legal justification for the Court to go beyond the administrative record.

While Plaintiff requests in its cross-motion for summary judgment an order addressing Lion's inspection obligations under the Raisin Marketing Order, judicial review is limited to reviewing the Judicial Officer's Decision and Order to determine if the Decision and Order is in accordance with the law.   The underlying merits of the petition cannot be addressed.

A.   *Res Judicata*

On April 25, 2005, the Judicial Officer filed his Decision and Order which dismissed the November Petition with prejudice. (AR 2005, Tab 24)   The decision found that the November Petition raised the same claims Lion had raised in an earlier filed

16

petition filed on September 14, 2003 ("September Petition") that was dismissed by the same Judicial Officer on October 19, 2004 in *In re Lion Raisins, Inc.,* 63 Agric. Dec.__ (October 19, 2004) (Doc. 36-4, Administrative Records, 2003 AMA Docket No. F&V 989-7, submitted by Defendant in Support of Motion for Summary Judgment ("AR 2003"), September Petition, Tab1 and October Decision and Order, Tab. 15).  The Judicial Officer concluded that the November Petition was barred by *res judicata* and dismissed the November Petition with prejudice.  The Judicial Officer specifically found:

> Petitioner's Petition raises the same claims Petition raised in the petition filed by Petition in *In re Lion Raisins*, *Inc.*, 63 Agric. Dec.__(October 19, 2004).  I dismissed with prejudice the petition filed by Petitioner in *In re Lion Raisins, Inc.,* 63 Agric. Dec.__(October 19, 2004).  A dismissal with prejudice has the effect of final adjudication on the merits favorable to the defendant and bars future suits brought by the plaintiff on the same cause of action.  A dismissal with prejudice constitutes a final judgment with the preclusive effect of *res judicata* not only as to all matters litigated and decided by the dismissal, but as to all relevant issues that could have been raised and litigated in the suit.  Therefore, Petitioner's Petition is barred by *res judicata* and should be dismissed with prejudice.

(AR 2005, Tab 24, at p. 10)

Under the doctrine of *res judicata*, a prior adjudication may have two distinct types of preclusive effects: claim preclusion (*res judicata*) and issue preclusion (collateral estoppel).

> Res judicata ensures the finality of decisions. Under res judicata, 'a final judgment on the merits bars further claims by parties or their privies based on the same cause of action.' Res judicata prevents litigation of all grounds for, or defenses to, recovery that were previously available to the parties, regardless of whether they were asserted or determined in the prior proceeding. Res judicata thus encourages reliance on judicial decisions, bars vexatious litigation, and frees the courts to resolve other disputes.

17

1 *Brown v. Felsen*, 442 U.S. 127, 131 (1979), *superceded by statute*

2 *on other grounds* (citations and quotations omitted). "Under the

3 doctrine of res judicata, a final judgment on the merits

4 precludes the parties from relitigating claims which were or

5 could have been raised in that action." *Amaro v. Continental Can*

6 *Co.*, 724 F.2d 747, 749 (9th Cir. 1984)(citing *Nevada v. United*

7 *States,* 463 U.S. 110, 103 (1983)). "A factor to be considered in

8 determining whether the same claim is involved is whether the two

9 suits involve infringement of the same right." *Id.* (citations and

10 quotations omitted).

11 A comparison of Lion's November Petition with its September

12 Petition reveals not only that the two petitions allege the same

13 claims regarding inspection requirements under the Raisin

14 Marketing Order, but Lion uses substantially the same language in

15 both.

16 First, the title reflects the similarity of claims advanced

17 sought by the two petitions:

18 **September Petition Title**:

19
20
21
22
23
24   Petition to Enforce and/or Modify Raisin Marketing
      Order Provisions/Regulations and/or Petition to the
      Secretary of Agriculture to Eliminate as Mandatory the
      use of USDA's Processed Products Inspection Branch
      Services for All Incoming and Outgoing Raisins, as
      Currently Required by 7 C.F.R. § § 989.58 & 989.59, And
      to Exempt Petitioner from the Mandatory Inspection
      Services by USDA for Incoming and Outgoing Raisins
      and/or Any Obligations Imposed in Connection Therewith
      That are Not in Accordance with Law

(AR 2003, Tab 1)

25
26   **November Petition Title**:

27
28   Petition to Enforce and/or Modify Raisin Marketing
     Order Provisions/Regulations and/or Petition to the
     Secretary of Agriculture to Eliminate as Mandatory the
     Use of USDA's Processed Products Inspection Branch

**18**

**Services for All Incoming and Outgoing Raisins, as Currently Required by 7 C.F.R. §§ 989.58 & 989.59, To Exempt Petitioners from the Mandatory Inspection Services by USDA for Incoming and Outgoing Raisins and/or Any Obligations Imposed in Connection Therewith That are Not in Accordance with Law**

(AR 2005, Tab 24)

The title of the petitions show Lion makes the same challenge to the identical provisions, 7 C.F.R. § 989.58 and § 989.59, the inspection and certification regulations for incoming and outgoing raisins.  The relevant portions of 7 C.F.R. § 989.58 and § 989.59 are as follows:

§ 989.58 Natural condition raisins.

(d) Inspection and certification.
(1) *Each handler shall cause an inspection and certification* to be made of all natural condition raisins acquired or received by him,...The handler shall submit or cause to be submitted to the committee a copy of such certification, together with such other documents or records as the committee may require. Such certification shall be issued by inspectors of the Processed Products Standardization and Inspection Branch of the U.S. Department of Agriculture, *unless the committee determines, and the Secretary concurs in such determination, that inspection by another agency would improve the administration* of this amended subpart...

7 C.F.R. § 989.58(d)(1)  (emphasis added).

§ 989.59 Regulation of the handling of raisins subsequent to their acquisition by handlers.

(d) Inspection and certification. ...*each handler shall, at his own expense, before shipping ... cause and inspection to be made of such raisins* to determine whether they meet the then applicable minimum grade and condition standards for natural condition raisins or the then applicable minimum grade standards for packed raisins. Such handler shall obtain a certificate that such raisins meet the aforementioned applicable minimum standards and shall submit or cause to be submitted to the committee a copy of such certificate together with such other documents or records as the committee may require. The certificate shall be issued by the Processed Products Standardization and Inspection Branch of the United States Department of Agriculture,

19

> *unless the committee determines, and the Secretary concurs in such determination, that inspection by another agency will improve the administration of this amended subpart.*

7 C.F.R. § 989.59(d) (emphasis added).

In addition, to challenging the same provisions, the issues Lion is addressing are predominately similar in both the November 10, 2004 Petition and September 10, 2003 Petition:

(1) USDA's inspection fees were not established through formal rulemaking.

**September Petition**:

> The fees imposed by the USDA Inspection Service have not been properly adopted under the Marketing Order and are also arbitrary and capricious, and not based on the actual costs of providing the service to Petitioners.

> Without complying with the Administrative Procedures Act, the USDA Inspection Service unilaterally comes out every year stating what its inspection fee will be and what Petitioners must pay.

(AR 2003, Tab 1, ¶¶ 8, 16)

**November Petition**:

> The fees imposed by the USDA Inspection Service have not been properly adopted under the Marketing Order and are also arbitrary and capricious and not based on the actual costs of providing the service to Lion.

(AR 2005, Tab 1, ¶ 8)   These claims are in substance identical.

(2) USDA's inspection fees are unreasonably high and not based on actual cost; and Lion is often shorted inspectors.

**September Petition***:

> Petitioner Lion runs approximately 15 tons per hour, for which it is paying USDA approximately $135.00 per hour for inspection services.   There are only two USDA inspectors working at Lion at any one time, and, on many occasions there is only one inspector.

> At the $9.00 per ton fee the USDA charges, this equates to a cost of only $9.00 per hour for one inspector.   A consumer pack-oriented packed could have as many as six

inspectors on various consumer lines and only incur
$54.00 per hour in inspection fees.   In
comparisons,...Lion incurs approximately $135.00 per
hour one inspector.

(AR 2003, Tab 1, ¶¶ 8, 9)

**November Petition**

Lion runs approximately 15 tons per hour which means
that Lion is paying for USDA inspections at
approximately $135.00 per (it will be more now since
the rate has increased to $10.00 per ton), and there
are generally only two USDA inspectors working at any
one time, and, on many occasions only one inspector is
working at Lion.

At the $9.00 per ton fee the USDA charges, this equates
to a cost of only $9.00 per hour for one inspector.   A
consumer pack-oriented packer could have as many as six
inspectors on various consumer lines and only incur
$54.00 per hour in inspection fees.   In
comparisons,...Lion incurs approximately $135.00 per
hour one inspector.

Lion is shorted USDA inspectors, and does have their
very own USDA area supervisor, whereas a major
competitor of Lion has far more inspectors and have
their very own area supervisor and thus receive far
better service than Lion receives for the same price
per ton...

(AR 2005, Tab 1, ¶¶ 8-9, 13)   These claims are in substance

identical.

(3) The USDA's Inspection Service performs "negligent"

inspections and "cannot be trusted."

**September Petition**:

...With the few checks that the USDA performs, even
less [raisin stems] are found, making their [USDA's]
inspection results inadequate and a misrepresentation
of the product's actual quality.

Dating back to at least 1996, on an industry-wide
basis, the USDA Inspection Service has been and is
engaged in a pattern and practice of negligently
accounting for the grade and quality of incoming and
outgoing raisins, in addition to generating negligent
incoming and outgoing Inspection Reports at
Petitioners' facilities... These negligent incoming and
outgoing Inspection Reports authored by the USDA

21

1

2      Inspection are ratified and approved by USDA Inspection
       Service supervisors, agent in change, and even at USDA
3      headquarters in Fresno, California and Washington, D.C.
       Petitioners have filed formal and informal complaints
       to the Raisin Administrative Committee and to the USDA
4      officials in Fresno, California and in Washington D.C.
       regarding the USDA inspection negligence; however, the
       USDA refuses to change its procedures and accounting;

5

(AR 2003, Tab 1, ¶ 14, 15.A)

6

     November Petition:

7

8      ...USDA has proven to have an error rate of 20% on
       their documentation...Lions' Quality Control knows that
       the USDA Inspector error rate is high and if it
9      continues at this level, Lion fees the USDA's negligent
       behavior may rub off and threaten the integrity of
10     Lion's in-house Quality Control personnel.

11     Dating back to at least 1996 and continuing to the
       present, and on an industry-wide basis, the USDA
12     inspection service has been, and is, engaged in a
       pattern and practice of negligently inspecting the
13     raisins on an incoming and outgoing basis, and
       negligently recording the grade and quality of incoming
14     and outgoing raisins...Outgoing USDA inspection now
       actually violates the Marketing Order for Processed
15     Raisins by allowing raisins to be shipped into the
       market when they exceed 18.4% in moisture.

16

       It is arbitrary, capricious and not in accordance with
17     law for Lion to: (1) pay USDA inspection service for
       negligently performed inspection services and for the
18     faulty and erroneous inspection results; (2) ...to pay
       for that service when the USDA inspection service
19     erroneously and negligently inspects and records the
       grade of incoming inspections; and (3) for the
20     marketing order to require that the Lion to use the
       USDA inspection service for incoming and outgoing
21     raising when that service is negligently and
       erroneously performed...

22

       When USDA inspectors and their aides negligently
23     perform incoming inspections...It is thus arbitrary,
       capricious and not in accordance with law for the
24     marketing order to require Lion to use the USDA
       inspection service...but then negligently inspect and
25     record the grade and quality...When USDA negligently
       performs the inspection service and grading results
26     showing that there are more "meeting" raisins than what
       the actual grade indicates...

27

(AR 2005, Tab 1, ¶¶ 10-12, 14)  The substance of the claims are

28

22

identical although the November Petition includes more factual detail.

(4) Lion's "quality control" department is more efficient and better than USDA inspectors, and Lion's standards are higher than USDA's.

**September Petition**:

> Both Petitioners have their own quality control departments whose duties range from product inspection, sanitation, pest control, metal detection, etc.  At Petitioners' daily average volumes, Petitioners could employ 8-9 quality control people for the 100 plus dollar per hour that USDA charges Petitioners, or approximately $1,000.00 per day or more for one inspector at each of the Petitioners' plant.

> Further, Petitioners' inspect their processed products to their own standards, which are much more stringent than the USDA standards for processed product.

(AR 2003, Tab 1, ¶¶ 13-14)

**November Petition**:

> Lion has their own quality control department whose duties range from processed product inspection, sanitation, pest control, metal detection, etc.  At Lions' daily average volume Lion could employ 10 quality control people for the 135 plus dollars per hour that USDA charges Lion.  USDA has proven to have an error rate of 20% on their documentation.  Lions' Quality Control are not allowed such a loose rein on their errors.

(AR 2005, Tab 1, ¶ 10)   The petitions contain the same claim with more factual detail in the November Petition.

(5) USDA's inspection fees "are biased towards consumer-oriented [rather than bulk] processors" like Lion.

**September Petition**:

> The Inspection Service Fees are biased toward the consumer-oriented processors; all processors are charged $9.00 per ton, but the consumer lines (those that pack the retail package of raisins) do far less volume per hour (one ton per hour) versus the bulk line, which are Petitioners' majority of business.

23

With Petitioners paying $9.00 per ton at 12-15 tons per hour, Petitioners are subsidizing the consumer processor lines of their competitors who run approximately one ton per hour with the same number or more inspectors than those at Petitioners' facilities...

(AR 2003, Tab 1, ¶ 15.D)

November Petition:

Generally, a consumer-pack oriented processor/handler (unlike Lion), on the other hand, with a full line of products, packages product at an approximate average of one ton per hour.  At the $9.00 per ton fee the USDA charges, this equates to a cost of only $9.00 per hour for one inspector.  A consumer pack-oriented packed could have as many as six inspectors on various consumer lines and only incur $54.00 per hour in inspection fees.  In comparisons,...Lion incurs approximately $135.00 per hour one inspector.

(AR 2005, Tab 1, ¶ 9)  These claims are substantially similar.

(6) The USDA's inspections are "biased" towards raisin growers.

September Petition:

The USDA has a built-in bias with the inspection of the producers of incoming raisins to insure that the raisins pass inspection with little or no rejections...The USDA has a built-in bias to force the packers, not the producers, to pay.  The USDA also permits persons affiliated with or related to producers to inspect raisins who have a built-in bias for raisin producers, causing an extreme conflict of interest.

(AR 2003, Tab 1, ¶ 15.F)

November Petition:

...Dating back to at least 1996, and continuing to present, USDA inspectors and the inspector aides performing incoming inspections will grade raisins in such a way, and/or record the results of the raisins in such a way, to favor the producer receiving a higher price for the raisins than what the grower otherwise deserved to receive, and the USDA inspection service would erroneously provide the grower with more weight of "meeting" raisins than what the grower deserved...

When USDA inspectors and their aides negligently perform incoming inspections and the grading results to

24

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

the benefit of the producers but to the corresponding
detriment of Lion ...

(AR 2005, Tab 1, ¶¶ 11, 14)   These claims are substantially
similar.

Lion's September Petition was dismissed with prejudice by
the ALJ on July 15, 2004. (AR 2003, Tab 10).   Lion appealed the
decision and on October 19, 2004 the Judicial Officer issued
its' October Decision and Order dismissing the September
Petition with prejudice. (AR 2003, Tab 11, 15)   Lion did not
challenge the October 19, 2004 Decision and Order by the
Judicial Officer in District Court, although it was represented
by knowledgeable counsel and had the opportunity to do.

In the November Petition, Lion challenged the same
regulations of the Raisin Marketing Order on the same grounds
and employed the same arguments, and often, identical language
of its earlier petition.   Attempts to relitigate issues
previously adjudicated have been specifically rejected by the
USDA.   In *In re Gerawan Co. Inc., A California Corporation,* 90
AMA Docket Nos. F&V 916-6 and 917-7, 50 Agric. Dec. 1363, 1991
WL 333618 (U.S.D.A. October 31, 1991), the JO affirmed an ALJ
decision dismissing a petition under the doctrine of *res
judicata* because the petition attempted to re-litigate the same
issues previously dismissed in an earlier case.

The record in Gerawan I clearly shows that petitioner
could have had its challenges to the 1988 interim final
rules determined in that proceeding if it had chosen to
do so. It neglected to do so, and the ALJ's
determination of dismissal "with prejudice" correctly
applied the standard of res judicata in the instant
proceeding.

However, the instant Petition alleges the same wrong
(the 1988 interim final rules are not in accordance

25

> with law) which infringes the same right (the handling of nectarines, plums, and peaches), is based on the same statutory authority, and is made in virtually identical language as the dismissed allegations of Gerawan I.
>
> The challenged regulations are the same regulations, imposing the same restrictions on the petitioner as were dismissed with prejudice in Gerawan I.

*In re Gerawan Co. Inc.*, *A California Corporation* 90, **AMA Docket Nos. F&V 916-6 and 917-7, 50 Agric. Dec. 1363, 1369-70, 1991 WL 333618 *4 (U.S.D.A. October 31, 1991).**

Even if viewed in the light most favorable to Lion, the evidence-in the form of the administrative records of both the September Petition of 2003 and the November Petition of 2004, instituted by Lion-establishes that there is no genuine issue of material fact to be adjudicated.  The USDA properly found Lion's November Petition barred by *res judicata*.[5]

The Judicial Officer's decision concerning *res judicata* is in accordance with the law*.*

**B.   Request for Hearing**

---

[5] **The Judicial Officer's decision also dismissed the November Petition on Plaintiff's failure to abide by certain Rules of Practice, § 900.52(b)(1)-(2) and (4).  Neither Defendant USDA nor Plaintiff Lion has addressed this portion of the Judicial Officer's decision in their motions for summary judgment.  It is unclear whether this portion of the Judicial officer's decision is arbitrary, capricious or not in accordance with law because neither party addresses whether pleading standards established by the Federal Rules of Civil Procedure apply to USDA petitions.  However, because the November Petition was dismissed with prejudice on *res judicata* grounds and the Decision and Order is in accordance with law and any decision on the Rules of Practice would not change the dismissal on prejudice grounds, there is no need to address this portion of the Decision and Order.**

1    Lion claims that the Judicial Officer arbitrarily denied

2  Lion "a mandatory hearing to determine what it means to 'cause'

3  an inspection and certification." (Doc. 47, Reply to Defendant's

4  Motion for Summary Judgment or Partial Summary Judgment, p.

5  2:19-20; Doc. 37, Plaintiff's Memorandum of Points and

6  Authorities in Support of Cross-Motion for Summary Judgment, p.

7  5:16-17; Doc. 1, Complaint, ¶ 24)

8    Section 7 U.S.C. § 608(c)(15)(A) provides handlers the

9  opportunity to file a petition for a review of a provision or

10 obligation under any marketing order that is not in accordance

11 with the law.  As part of the petition process, a handler is

12 also provided an opportunity for hearing on the petition.

13 However, the statute specifically states, "He shall thereupon be

14 given an opportunity for a hearing upon such petition, *in*

15 *accordance with regulations made by the Secretary of*

16 *Agriculture*, with the approval of the President." 7 U.S.C §

17 608c(15)(A)(emphasis added).[6]  Although, a hearing is permitted

18 for an action filed under 7 U.S.C. § 608c(15)(A), it is subject

19

20    [6] **7 U.S.C. § 608c(15)(A) states in total:**

21

22    **(15) Petition by handler and review**
       **(A) Any handler subject to an order may file a written**
23    **petition with the Secretary of Agriculture, stating that any**
       **such order or any provision of any such order or any**
24    **obligation imposed in connection therewith is not in**
       **accordance with law and praying for a modification thereof**
25    **or to be exempted therefrom. He shall thereupon be given an**
       **opportunity for a hearing upon such petition, in accordance**
26    **with regulations made by the Secretary of Agriculture, with**
       **the approval of the President. After such hearing, the**
27    **Secretary shall make a ruling upon the prayer of such**
       **petition which shall be final, if in accordance with law.**
28

27

to regulations promulgated by the Secretary of Agriculture with the approval of the President.

In this suit, the regulations of 7 C.F.R. § 900.50-71 titled "Rules of Practice Governing Proceedings on Petitions to Modify or To Be Exempted From Marketing Orders" are regulations governing the filing of such a petition, including, but not limited to, regulations on service of a petition (§ 900.52(a)), the contents of a petition (§ 900.52(b)), motions to dismiss petitions (§ 900.52(c)), judges (§ 900.55), depositions (§ 900.61) and applications to reopen hearings (§ 900.68). Under these regulations, a petition may be subject to a motion to dismiss before a hearing is conducted. If the Administrator of the AMS files a motion to dismiss because it is "of the opinion that the petition, or any portion thereof, does not substantially comply, in form or content, with the act or with the requirements of paragraph (b) of this section [§ 900.52(b)], or is not filed in good faith, or is filed for purposes of delay...," 7 C.F.R. § 900.52(c), and the motion to dismiss is granted with prejudice, there will be no hearing.

Here, a motion to dismiss was filed by the Administrator against Lion's November Petition pursuant to § 900.52(b) and (c) on the ground that a matter of policy was raised, that the bar of *res judicata* applies, and that the petition factually does not comply with specific pleading requirements. If the motion to dismiss was properly granted, then a hearing was not required. Plaintiff does not assert the regulations governing a petition hearing are arbitrary, capricious and not in accordance with law.

28

1    Although technical pleading issues could have been

2  satisfied by amendment in accordance with AMA Rules, *res*

3  *judicata* bars the Petition for Hearing for the reasons stated

4  above.  It is unnecessary to remand on the ground that the

5  issues raised addresses now justiciable policies.  The Judicial

6  Officer's decision not to hold a hearing is in accordance with

7  the law.

8  C.   Motion to Strike

9    The USDA also moves for summary judgment claiming that the

10  Judicial Officer properly ordered that Lion's February Amended

11  Petition be stricken.  On February 9, 2005, before the ALJ ruled

12  on the pending motion to dismiss the November Petition, Lion

13  filed an amended petition, the February Amended Petition. (AR

14  2005, Tab 9).  On February 14, 2005, the AMS filed a motion to

15  strike Lion's February Amended Petition as premature and not in

16  accordance with the applicable Rules of Practice. (AR 2005, Tab

17  11)  On March 7, 2005, the ALJ issued an order striking Lion's

18  February Amended Petition as premature. (AR 2005, Tab 13)  The

19  ALJ also provided Lion with leave to file an amended petition.

20  (AR 2005, Tab 13 at p. 3)  On March 11, 2005, AMS appealed the

21  ALJ's decision. (AR 2005, Tab 17)

22    On April 25, 2005, the Judicial Officer's Decision and

23  Order not only dismissed the November Petition with prejudice

24  but granted the motion to strike the February Amended Petition

25  on the basis that it was premature. (AR 2005, Tab 24)

26    Lion alleges in its Complaint that the Judicial Officer's

27  decision to strike the February Amended petition was arbitrary

28  and capricious and Lion should have been permitted to address

29

any remaining issues that the Judicial Officer had with the November Petition and to file the February Amended Petition pursuant to § 900.52b. (Doc. 1, Complaint ¶ 27)

USDA rejoins that when a motion to dismiss is filed, the Rules of Practice provide that a petitioner may file an amended petition only <u>after</u> the ALJ has issued an order dismissing all or a portion of the petition.  USDA contends the Judicial Officer properly ordered Lion's petition stricken because it was filed prematurely -more than one month <u>before</u> the ALJ issued a decision on the pending motion to dismiss.

The motion to dismiss provisions, provide in part:

> (2) Decision by the Judge.  The Judge, after due consideration, shall render a decision upon the motion stating the reasons for his action.  Such decision shall be in the form an order and shall be filed with the hearing clerk who shall cause a copy therefore to be served upon the petitioner and a copy thereof to be transmitted to the Administrator.. Any such order shall be final unless appealed pursuant to § 900.65: <u>Provided</u>, That within 20 days following the service upon the petition of a copy of the order of the Judge dismissing the petition, or any portion thereof, on the ground that it does not substantially comply in form and content with the act or with paragraph (b) of this section, the petitioner shall be permitted to file an amended petition.

7 C.F.R. § 900.52(c)(2).

The Judicial Officer ruled on USDA's motion to strike the February Amended Petition stating:

> Section 900.52(c)(2) of the Rules of Practice (7 C.F.R. § 900.52(c)(2)) provides, when a motion to dismiss has been filed, a petitioner may file an amended petition after the Hearing Clerk serves the petitioner with the [ALJ's] order dismissing the petitioner's petition or any portion of the petitioner's petition.  Petitioner filed the Amended Petition on February 9, 2005, 33 days prior to the date the Hearing Clerk served the Petition with the ALJ's March 3, 2005, Order dismissing Petitioner's Petition.  Therefore, Petitioner's Amended Petition should be stricken as premature.

(2005, A.R. Tab 24 at pp. 9-10 (fn. Omitted))

Plaintiff claims that the Judicial Officer applied the wrong Rule of Practice and the applicable rule is § 900.52b governing amended pleadings which states:

> At any time before the close of hearing the petition or answer may be amended, but the hearing shall at the request of the adverse party, be adjourned or recessed for such reasonable time as the judge may determine to be necessary to protect the interests of the parties. Amendments subsequent to the first amendment or subsequent to the filing of an answer may be made only with leave of the judge or with the written consent of the adverse party.

7 C.F.R. § 900.52b.

Lion contends that based on § 900.52b it had the right to file the February Amended Petition as there was no hearing or answer filed by Defendant USDA and the February Amended Petition was its first amended petition.  USDA responds that "It would be unfair, and a waste of resources, to allow a petitioner to postpone administrative decisions on faulty petitions by prematurely amending them.  A petition could repeatedly attempt to revise his petition through piecemeal amendment, while the Secretary would be required to expend departmental resources seeking dismissal of multiple faulty petitions -with no final decision in sight." (Doc. 36, USDA's MSJ, p. 22:16-23).  USDA's argument is misplaced.  The regulations governing amended petitions only permit one amended petition to be filed before the filing of an answer or a hearing, not serial amendments.  Any further amended petitions require with leave of the judge or consent of the adverse party.  USDA's concern that continuing amendments would prevent a decision if Lion were permitted to amend its petition before the ALJ issued a decision on the

1   motion to dismiss is incorrect.  While the case cited by

2   Plaintiff, *In re: Handlers Against Promoflor*, FCFGPIA Docket No.

3   96-0001, 56 Agric. Dec. 1529, 1997 WL 57747 (U.S.D.A. September

4   8, 1997), did not directly address this issue, the Court in

5   passing noted that after the USDA had filed a motion to dismiss

6   under Section 900.52(c)(2), the petitioner in the suit filed two

7   amendments to cure deficiencies under Section 900.52b.  The

8   Court did not take issue with the first amended petition and

9   noted that the second amended petition was filed with leave.  It

10  denied leave to file a third amended complaint. *Id.* at * 9.

11       The Judicial Officer had no reason to ignore the

12  regulations regarding amendments to petitions, particularly, a

13  petitioner's right to file a first amended petition before USDA

14  filed an answer or a hearing has been conducted, pursuant to §

15  900.52b.  "As a general rule, courts attribute to the words of a

16  statute their ordinary meaning.  Similarly administrative

17  orders, like statutes, are not to be given strained and

18  unnatural constructions." *Reddi-Wip Co. of Philadelphia v.*

19  *Hardin*, 315 F.Supp. 1117, 1118 (E.D. Pa. 1970).  Section 900.52b

20  provides for the "orderly conduct of administrative cases" by

21  requiring leave or consent to file a second amended petition.

22  It appears, the Judicial Officer ignored the plain meaning of §

23  900.52b, did not analyze the provision, and solely based the

24  decision on § 900.52(c)(2), which governs when an amended

25  petition can be filed after an ALJ decision is filed (in a

26  motion to dismiss).

27       At oral argument, USDA's counsel argued that although the

28  Judicial Officer did not address in its order the right of Lion

**32**

to file an amended petition under § 900.52b, based on the
February Amended Petition, allegedly filed pursuant to §
900.52b, it was not appropriate to do so due to the fact that
the February Amended Petition was substantially the same as the
dismissed November Petition.

The title to the two petitions are as follows:

November Petition Title:

Petition to Enforce and/or Modify Raisin Marketing
Order Provisions/Regulations and/or Petition to the
Secretary of Agriculture to Eliminate as Mandatory the
Use of USDA's Processed Products Inspection Branch
Services for All Incoming and Outgoing Raisins, as
Currently Required by 7 C.F.R. §§ 989.58 & 989.59, To
Exempt Petitioners from the Mandatory Inspection
Services by USDA for Incoming and Outgoing Raisins
and/or Any Obligations Imposed in Connection Therewith
That are Not in Accordance with Law

(AR 2005, Tab 24, p. 1)

February Amended Petition Title:

Amended Petition to Enforce and/or Modify Raisin
Marketing Order Provisions/Regulations; To Exempt
Petitioner from the Mandatory Inspection Services by
USDA for Incoming and Outgoing Raisins, To Preclude the
Raisin Administrative Committee and/or USDA from
Receiving the Raisin Administrative Committee and/or
USDA from Receiving the Otherwise Required Raisin
Administrative Committee Forms; Petition to Allow
Buyers and Producers to Call for Inspection Services,
and to Delete Certain Obligations Imposed in Connection
Therewith that are Now Not in Accordance with Law

(AR 2005, Tab 9, p. 1)

Plaintiff's February Amended Petition is largely similar to
the November Petition save for one additional allegation
regarding disclosure of confidential information.  Plaintiff's
introductory paragraph to the petition titled "Nature of Action"
states:

4. This petition is brought because Petitioner believes
certain obligations imposed in connection with the

Raisin Order are not in accordance with law...For example, Part 52 includes regulations regarding USDA inspection and certification services required under Section 989.58(d) and 989.59(d).
5. Petitioner must <u>cause</u> inspection and certification of raisins upon acquiring them from its Producers, and prior to shipping them to its Customers; Sections 989.58(d) and 989.59(d) respectively.  Said inspections and certification shall be made by a specific branch on of the USDA, unless the Raisin Administrative Committee (hereinafter "RAC") determines, and the Secretary of Agriculture concurs, that "inspection by another agency would improve the administration..."
6. <u>Any</u> "interested party" may apply for USDA inspection and certification services.  An "interested party" is defined as any business entity with a "financial interest in the commodity involved;" Section 52.2.  It is axiomatic that Petitioner, its Producers and Customers are interested parties.

(AR 2005, Tab 9, pp. 2-3)  Plaintiff's February Amended Petition

then provides a "Statement of Facts" which describes the same

issues of who can "cause" an incoming and outgoing inspection of

the raisins, negligent inspection results, and excessive

inspection charges being paid by Lion, including allegations of

being charged the same inspection fees per ton as "slower

handlers" and receiving the same number of inspectors as "slower

handlers."  Plaintiff however, does alleges new facts regarding

disclosure of their confidential information by USDA and RAC

that were not alleged in the November Petition.

11. During the course of incoming and outgoing Inspection services, USDA and RAC obtained and disclosed Petitioner's nonexempt confidential information in violation of Section 989.75; 7 U.S.C. § 608d; and 18 U.S.C. 1905...On or about January 10, 2005, a RAC employee disclosed Petitioner's confidential information to one of Petitioner's chief competitors.

(AR 2005, Tab 9, p. 4)

Plaintiff's February Amended Petition then provides a

"Statement of Grounds" which largely mirror the November

34

Petition[7] except for additional grounds of disclosure of Plaintiff's confidential information by RAC and USDA.  The section discusses the alleged unlawful disclosure by USDA and RAC of Lion's confidential information.  Lion states that it:

> obligates Petitioner [Lion] to withhold paperwork that is requested by USDA and/or RAC.  Their conduct is arguably a federal offense that calls for criminal penalties and removal from office under 18 U.S.C. § 1905.  Moreover their conduct is arbitrary, capricious, abuse of discretion, and not otherwise in accordance with law, including Section 989.75 and 7 U.S.C. § 608d.

(AR 2005, Tab 9, pp. 5-6)

The "Prayer for Relief" of Plaintiff's February Amended is largely similar to the relief requested in the November Petition, except for the additional relief sought to remedy disclosure of Lion's confidential information.  The ALJ and the Judicial Officer should have addressed this additional disclosure of confidential information claim, alleged in Lion's February Amended Complaint.

The Judicial Officer's order striking Lion's February Amended Petition is not in accordance with law and the suit is remanded for further proceedings in accordance with this decision to address the confidential disclosure of information claim in the February Amended Petition.

//

//

//

---

[7] Plaintiff again discusses the issue of who can "cause" an inspection of the incoming and outgoing raisins pursuant to § 989.58(d) and § 989.59(d); the high cost of inspection results; the shortage of inspectors; and the negligent inspections.

1

**CONCLUSION**

2        For the reasons set forth above,

3        **(1) Defendant USDA's motion for summary judgment is

4   GRANTED IN PART AND DENIED IN PART.   The February Amended

5   Petition is remanded to the Judicial Officer for further

6   proceedings in accordance with this decision.**

7        **(2) Plaintiff's cross-motion for summary judgment is

8   DENIED.**

9

10

11   IT IS SO ORDERED.

12   **Dated:    March 19, 2008                      /s/ Oliver W. Wanger**
                                        UNITED STATES DISTRICT JUDGE

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**36**