**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **LION RAISINS, INC.,** | **1:05-CV-00640 OWW-SMS** |
| **Plaintiff,** | **MEMORANDUM DECISION RE DENYING MOTION TO AMEND/MOTION FOR RECONSIDERATION (DOC. 60)** |
| **v.** | |
| **UNITED STATES DEPARTMENT OF AGRICULTURE,** | |
| **Defendant.** | |

Plaintiff Lion Raisins, Inc. ("Lion") moves to alter or amend the judgment entered on the March 20, 2008 Memorandum Decision re Granting in Part and Denying in Part Cross-Motions for Summary Judgment, (Doc. 56 March 20 Order), pursuant to Fed. R. Civ. P. 59(e) and moves for reconsideration pursuant to Local Rule 78-230(k). (Doc. 58, Motion, Filed April 2, 2008) Defendant United States Department of Agriculture ("USDA") opposes the Motion. (Doc. 60, Opposition, Filed April 25, 2008). Lion initiated this case in federal court by filing a complaint pursuant to section 608c(15)(B) of the Agricultural Marketing Agreement Act of 1937, 7 U.S.C. § 601 *et seq*. ("AMAA") and the Administrative Procedure Act, 5 U.S.C. § 702-706 ("APA"). This case arises from the administration of a federal California raisin marketing order, enacted under the authority of the AMAA, which regulates raisins in the California raisin marketing area. *See* 7 C.F.R. § 989.1 -.801. ("Raisin Marketing Order"). Oral

1

argument was heard on June 23, 2008.  No appearance by Plaintiff's counsel did not appear at oral argument.

## 1. PROCEDURAL BACKGROUND

**A. Administrative Record**

1. Lion initiated proceedings on November 10, 2004, by filing the November Petition ("November Petition") with the USDA pursuant to section 608c(15)(A) of the AMAA.  (Doc. 43, Administrative Records, 2005 AMA Docket No. F&V 989-1, submitted by Defendant in Support of Motion for Summary Judgment ("AR 2005"), Tab 1)

2. On December 29, 2004, Defendant USDA filed a Motion to Dismiss the November Petition.  (Doc. 43, AR 2005, Tab 5.)

3. On February 9, 2005, Plaintiff filed the February Amended Petition ("February Amended Petition").  (Doc. 43, AR 2005, Tab 9)

4. On February 14, 2005, Defendant filed a Motion to Strike the February Amended Petition.  (Doc. 43, AR 2005, Tab 11)

5. On March 7, 2005, the ALJ issued an order dismissing the November Petition, striking the February Amended Petition as premature, and granting Lion an opportunity to file an amended petition within twenty (20) days.  (Doc. 43, AR 2005, Tab 13)

6. On March 11, 2005, USDA appealed the ALJ decision, seeking dismissal of the November Petition with prejudice and opposing the decision to permit Lion to file an amended petition. (Doc. 43, AR 2005, Tab 15)

7. On March 24, 2005, Lion re-filed the February Amended Petition ("Re-Filed Amended Petition") pursuant to the March 7, 2005 Order.  (Doc. 43, AR 2005, Tab 17)

8. On March 30, 2005, Lion filed a response to USDA's appeal petition. (Doc. 43, AR 2005, Tab 19)

9. On March 30, 2005, USDA filed a Motion to Strike the Re-Filed Amended Petition. (Doc. 43, AR 2005, Tab 20)

10. On April 21, 2005, Lion filed an opposition to USDA's Motion to Strike the Re-Filed Amended Petition. (Doc. 43, AR 2005, Tab 22)

11. On April 25, 2005, the Judicial Officer ("Judicial Officer" or "JO") dismissed the November Petition with prejudice, finding it was barred by *res judicata*, technical deficiencies, and failure to present a cognizable claim. The Judicial Officer also struck the February Amended Petition as premature, because it was filed before the March 7, 2005 ALJ Order. (Doc. 43, AR 2005, Tab 24) The Judicial Officer did not rule on the Re-filed Amended Petition.

12. On May 3, 2005, the ALJ dismissed the Re-Filed Amended Petition (filed in March 2005). (Doc. 43, AR 2005, Tab 26)

13. On June 3, 2005, Lion filed an appeal to the Judicial Officer from the ALJ May 3, 2005 Order dismissing the Re-Filed Amended Petition (filed in March 2005). (Doc. 43, AR 2005, Tab 27)

14. On June 27, 2005, USDA filed a response to Lion's petition for appeal. (Doc. 43, AR 2005, Tab 29)

15. On July 13, 2005, the Judicial Officer struck Lion's Re-Filed Amended Complaint (filed in March 2005). (Doc. 43, AR 2005, Tab 32)

B.   Federal Court Proceedings

1. On May 16, 2005, Lion filed a complaint for judicial

3

1  review of the Judicial Officer's April 25, 2005 Decision and
2  Order, dismissing with prejudice the November Petition and
3  striking the February Amended Petition. (Doc. 1, Complaint)
4      2.  On August 10, 2005, USDA filed an Amended Answer to
5  Complaint. (Doc. 13, Answer)
6      3.  On April 24, 2007, USDA filed a Motion for Summary
7  Judgment. (Doc. 36, USDA's MSJ)
8      4.  On April 25, 2007, Lion filed a Cross-Motion for Summary
9  Judgment. (Doc. 42, Lion's Cross-MSJ)
10     5.  On March 20, 2008, the Memorandum Decision re Granting
11 in Part and Denying in Part Cross-Motions for Summary Judgment
12 was entered. (Doc. 56, March 20 Order).
13     6.  On April 2, 2008, Lion filed its Motion to Alter or
14 Amend Judgment and Motion for Reconsideration. (Doc. 58, Motion)
15     7.  On April 25, 2008, USDA filed its Opposition to Lion's
16 Motion. (Doc. 60, Opposition)

## 2.  STANDARD OF REVIEW

Plaintiff brings a motion to amend or alter judgment pursuant to Fed. R. Civ. P. 59(e) and a motion for reconsideration pursuant to Local Rule 78-230(k).

**A.   Motion to Alter or Amend Judgment, 59(e)**

Pursuant to Rule 59(e), any motion to alter or amend judgment shall be filed no later than 10 days after entry of judgment.  A motion to alter or amend judgment is appropriate under limited circumstances, such as where the court is presented with newly-discovered evidence, where the court "committed clear error or the initial decision was manifestly unjust," or where there is an intervening change in controlling law.  *School*

4

*District No. 1J Multnomah County v. ACandS*, 5 F.3d 1255, 1263 (9th Cir. 1993).

A district court's denial of a motion for a new trial or to amend a judgment pursuant to Federal Rule of Civil Procedure 59 is reviewed for an abuse of discretion. *Far Out Productions, Inc. v. Oskar*, 247 F.3d 986, 992 (9th Cir. 2001); *Defenders of Wildlife v. Bernal*, 204 F.3d 920, 928-29 (9th Cir. 2000). A district court abuses its discretion when it bases its decision on an erroneous view of the law or a clearly erroneous assessment of the facts. *Coughlin v. Tailhook Ass'n*, 112 F.3d 1052, 1055 (9th Cir. 1997).

B.   Motion for Reconsideration, Local Rule 78-230(k)

When filing a motion for reconsideration, Local Rule 78-230(k) requires a party to show the "new or different facts or circumstances claimed to exist which did not exist or were not shown upon such prior motion, or what other grounds exist for the motion." Motions to reconsider are committed to the discretion of the trial court. *Combs v. Nick Garin Trucking*, 825 F.2d 437, 441 (D.D.C. 1987). To succeed, a party must set forth facts or law of a strongly convincing nature to induce the court to reverse its prior decision. *See, e.g., Kern-Tulare Water Dist. v. City of Bakersfield*, 634 F.Supp. 656, 665 (E.D.Cal. 1986), *aff'd in part and rev'd in part on other grounds*, 828 F.2d 514 (9th Cir. 1987).

C. Agency Action

The starting point for judicial review of agency action is the administrative record already in existence, not a new record made initially in the reviewing court. *Camp v. Pitts,* 411 U.S.

5

138, 142 (1973); *Southwest Center for Biological Diversity v. U.S. Forest Service*, 100 F.3d 1443, 1450 (9th Cir. 1996). The court may, however, consider evidence outside the administrative record for certain limited purposes, *e.g.*, to explain the agency's decisions, *Southwest Center,* 100 F.3d at 1450; or to determine whether the agency's course of inquiry was insufficient or inadequate. *Love v. Thomas*, 858 F.2d 1347, 1356 (9th Cir. 1988), *cert. denied*, 490 U.S. 1035 (1989); *Animal Defense Council v. Hodel*, 840 F.2d 1432, 1436 (9th Cir. 1988). In addition, a court, in certain instances, may require supplementation of the record or allow a party challenging agency action to engage in limited discovery. *Southwest Center*, 100 F.3d at 1450.

### 3. DISCUSSION

The background facts for this entire suit are set forth in prior rulings, therefore only pertinent facts are repeated and amplified upon for the purposes of evaluating Plaintiff's Motion. *See* Doc. 56, March 20 Order.

The Court on cross-motions for summary judgment remanded portions of the February Amended Petition to the Judicial Officer for further proceedings on the issue of breach of confidentiality by the USDA of Plaintiff's information, as the claim was not previously litigated and not barred by *res judicata*. Plaintiff contends in its Motion that the Court clearly erred in not remanding the issue of who can "cause" an inspection, specifically, Plaintiff seeks to have producers and growers "cause" an inspection, and claims this issue was not previously litigated in the November Petition nor the earlier filed September Petition and therefore is not barred by *res judicata.*

Plaintiff contends that this interpretation by the USDA of the Raisin Marketing Order that growers and buyers cannot request such qualifying inspections, first arose in December 2004 through a denial letter from the RAC, and could not have been included in the November Petition of 2004.

Under the doctrine of *res judicata*, a prior adjudication may have two distinct types of preclusive effects: claim preclusion (*res judicata*) and issue preclusion (collateral estoppel).

> Res judicata ensures the finality of decisions. Under res judicata, 'a final judgment on the merits bars *further claims by parties or their privies based on the same cause of action*.' Res judicata prevents litigation *of all grounds for*, or defenses to, *recovery that were previously available to the parties*, *regardless of whether they were asserted or determined in the prior proceeding*. Res judicata thus encourages reliance on judicial decisions, bars vexatious litigation, and frees the courts to resolve other disputes.

*Brown v. Felsen*, 442 U.S. 127, 131 (1979), *superceded by statute on other grounds* (citations and quotations omitted).  "Under the doctrine of res judicata, a final judgment on the merits precludes the parties from *relitigating claims which were or could have been raised in that action*." *Amaro v. Continental Can Co.*, 724 F.2d 747, 749 (9th Cir. 1984) (emphasis added), *citing Nevada v. United States,* 463 U.S. 110, 103 (1983)).  "A factor to be considered in determining whether the *same claim is involved* is whether the two suits involve *infringement of the same right*." *Id.* (citations and quotations omitted)(emphasis added).

Attempts to relitigate issues previously adjudicated have been specifically rejected by the USDA.  In *In re Gerawan Co. Inc., A California Corporation,* 90 AMA Docket Nos. F&V 916-6 and 917-7, 50 Agric. Dec. 1363, 1991 WL 333618 (U.S.D.A. October 31,

1991), the JO affirmed an ALJ decision dismissing a petition under the doctrine of *res judicata* because the petition attempted to re-litigate the same issues previously dismissed in an earlier case.

> The record in Gerawan I clearly shows that petitioner could have had its challenges to the 1988 interim final rules determined in that proceeding if it had chosen to do so. It neglected to do so, and the ALJ's determination of dismissal "with prejudice" correctly applied the standard of res judicata in the instant proceeding.
>
> However, the instant Petition alleges the same wrong (the 1988 interim final rules are not in accordance with law) which infringes the same right (the handling of nectarines, plums, and peaches), is based on the same statutory authority, and is made in virtually identical language as the dismissed allegations of Gerawan I.
>
> The challenged regulations are the same regulations, imposing the same restrictions on the petitioner as were dismissed with prejudice in Gerawan I.

*In re Gerawan Co. Inc.*, *A California Corporation* 90, AMA Docket Nos. F&V 916-6 and 917-7, 50 Agric. Dec. 1363, 1369-70, 1991 WL 333618 *4 (U.S.D.A. October 31, 1991).

The Court's March 20 Order found the September Petition of 2003[1] and the later filed November Petition of 2004 asserted similar claims and held that the JO's decision dismissing the claims on *res judicata* grounds was not arbitrary or capricious. The Court then ruled that Lion should have been permitted to

---

[1] The September Petition is an earlier filed petition, filed on September 14, 2003 ("September Petition") that was dismissed by the same Judicial Officer on October 19, 2004 in *In re Lion Raisins, Inc.,* 63 Agric. Dec.__ (October 19, 2004) (Doc. 36-4, Administrative Records, 2003 AMA Docket No. F&V 989-7, submitted by Defendant in Support of Motion for Summary Judgment ("AR 2003"), September Petition, Tab 1 and October Decision and Order, Tab. 15).

8

address any new claims filed in the subsequently filed February Amended Petition of 2005 pursuant to § 900.52b.[2]  The decision recognized that the February Amended Petition while largely similar to the November Petition, did contain one new claim, breach of confidentiality requirements.

> 11. During the course of incoming and outgoing Inspection services, USDA and RAC obtained and disclosed Petitioner's nonexempt confidential information in violation of Section 989.75; 7 U.S.C. § 608d; and 18 U.S.C. 1905...On or about January 10, 2005, a RAC employee disclosed Petitioner's confidential information to one of Petitioner's chief competitors.

(February Amended Petition, AR 2005, Tab 9, p. 4)

The question is whether the February Amended Petition asserted the same claims as the November Petition, with the exception of the breach of confidentiality claim.

Both petitions, the November Petition and the February Amended Petition challenge the same regulations, § 989.58 and 989.59 that govern the inspection requirements of raisins.[3]  The

---

[2] § 900.52b governs amended pleadings which states:

At any time before the close of hearing the petition or answer may be amended, but the hearing shall at the request of the adverse party, be adjourned or recessed for such reasonable time as the judge may determine to be necessary to protect the interests of the parties.  Amendments subsequent to the first amendment or subsequent to the filing of an answer may be made only with leave of the judge or with the written consent of the adverse party.

7 C.F.R. § 900.52b.

[3] The relevant portions of 7 C.F.R. § 989.58 and § 989.59 are as follows:

§ 989.58 Natural condition raisins.

9

title to the two petitions are as follows:

**November Petition Title**:

---

> (d) Inspection and certification.
> (1) *Each handler shall cause an inspection and certification* to be made of all natural condition raisins acquired or received by him,...The handler shall submit or cause to be submitted to the committee a copy of such certification, together with such other documents or records as the committee may require. *Such certification shall be issued by inspectors of the Processed Products Standardization and Inspection Branch of the U.S. Department of Agriculture*, unless the committee determines, and the Secretary concurs in such determination, that inspection by another agency would improve the administration of this amended subpart...

7 C.F.R. § 989.58(d)(1) (emphasis added).

> § 989.59 Regulation of the handling of raisins subsequent to their acquisition by handlers.
>
> (d) Inspection and certification. ...*each handler* shall, at his own expense, before shipping ... *cause [an] inspection to be made of such raisins* to determine whether they meet the then applicable minimum grade and condition standards for natural condition raisins or the then applicable minimum grade standards for packed raisins. Such handler shall obtain a certificate that such raisins meet the aforementioned applicable minimum standards and shall submit or cause to be submitted to the committee a copy of such certificate together with such other documents or records as the committee may require. *The certificate shall be issued by the Processed Products Standardization and Inspection Branch of the United States Department of Agriculture*, unless the committee determines, and the Secretary concurs in such determination, that inspection by another agency will improve the administration of this amended subpart.

7 C.F.R. § 989.59(d) (emphasis added).

> **Petition to Enforce and/or Modify Raisin Marketing Order Provisions/Regulations and/or Petition to the Secretary of Agriculture to Eliminate as Mandatory the Use of USDA's Processed Products Inspection Branch Services for All Incoming and Outgoing Raisins, as Currently Required by 7 C.F.R. §§ 989.58 & 989.59, <u>To Exempt Petitioners from the Mandatory Inspection Services by USDA</u> for Incoming and Outgoing Raisins and/or Any Obligations Imposed in Connection Therewith That are Not in Accordance with Law**

(AR 2005, Tab 24, p. 1) (emphasis added)

<u>**February Amended Petition Title**</u>:

> **<u>Amended</u> Petition to Enforce and/or Modify Raisin Marketing Order Provisions/Regulations; To Exempt Petitioner from the Mandatory Inspection Services by USDA for Incoming and Outgoing Raisins, To Preclude the Raisin Administrative Committee and/or USDA from Receiving the Raisin Administrative Committee and/or USDA from Receiving the Otherwise Required Raisin Administrative Committee Forms; <u>Petition to Allow Buyers and Producers to Call for Inspection Services</u>, and to Delete Certain Obligations Imposed in Connection Therewith that are Now Not in Accordance with Law**

(AR 2005, Tab 9, p. 1) (emphasis added)

The March 20 Order held that Plaintiff's February Amended Petition "Statement of Facts" described the *same issues of who can "cause" an incoming and outgoing inspection of the raisins*." The March 20 Order further held that the "Statement of Grounds" largely mirrored the November Petition's "Statement of Grounds" except for the additional ground concerning disclosure of Plaintiff's confidential information by RAC and USDA. The Order also held the "Prayer for Relief" was substantially similar, except for the additional relief sought to remedy disclosure of Lion's confidential information.

The question is whether the "cause" claim is the same as or identical to the claim which was previously adjudicated by the Judicial Officer. The Raisin Marketing Order provisions

11

challenged by Lion require each "handler" of California raisins to "cause an inspection and certification to be made of all natural condition raisins acquired or received" with exceptions not applicable here, and set forth minimum grade and condition standards for such raisins.  7 C.F.R. § 989.58(d)(1).  In the November Petition, Lion raised the inspection to determine whether Lion could obtain inspection services from a non-USDA provider and still satisfy its obligations under § 989.58(d) and 989.59(e).  (Doc. 43, AR 2005, Tab 5, November Petition, p. 7.)

In the February Amended Petition, the same inspection service issue was asserted, *e.g.,* whether a non-USDA provider could satisfy inspection obligations within the requirements of Sections 989.58(d) and 989.59(d).  The February Amended Petition also challenged whether Lion, as the handler, could have the customers (buyers) and/or producers "call for" or "cause" inspections to satisfy inspection obligations again within the meaning of Sections 989.58(d) and 989.59(d).  (Doc. 43, AR 2005, Tab 9, February Amended Petition, p.3, 5).

USDA argues that the Court correctly found the inspection issue raised in Lion's earlier petition was finally decided and was barred by *res judicata*.  The inspection issue had been adjudicated in prior judicial and administrative proceedings.  Defendant USDA contends that the Court determined that both the November Petition and the February Amended Petition assert a challenge by Lion to the inspection requirements of the Raisin Marketing Order, albeit made with different degrees of specificity.

USDA also argues that the issue of whether growers and

customers can "call for" or "cause" inspections on Lion's behalf has already been adjudicated against such an interpretation of the Raisin Marketing Order in other cases and administrative proceedings. The unpublished Eastern District of California case of *Lion Bros v. U.S. Dep't of Agriculture*, No. CVF050292RECSMS, 2005 WL 2089809 (E.D. Cal. Aug. 29, 2005), determined that one must be a handler, not a grower or customer of a handler, to receive the "handler" rate for inspections, and to obtain inspections that meet the Raisin Marketing Order's inspection and certification requirements:

> Lion argues that the sole issue before the court is a legal one: can "Lion Bros, a producer of raisins [ ] governed by the Raisin Marketing Order receive and pay for the same inspection that a handler, also regulated by the same Marketing Order, can receive and pay for under the grade and condition requirements of the Marketing Order."
> ***
> A. Lion Is Not Entitled to Inspections Under the Order
>
> The Raisin Marketing Order is specific; it states that "Each handler, shall cause an inspection to be made...." 7 C.F.R. § 989.58(d) (emphasis added). It is undisputed that Lion is a producer and not a handler of raisins. Lion has cited no language in the Raisin Marketing Order under which it could be arguable that a producer such as Lion is required to procure inspections under the Order in the same manner and at the same rate as handlers. Nor is there any language in the Raisin Marketing Order that could be said to entitle a producer to receive inspections pursuant to the Order. This is precisely what Mr. Worthley communicated to Lion in October of 2004. Compl. Ex. B. Because Lion was not required or entitled to receive inspections under the Order, there can be no argument that such an inspection was wrongfully denied.

2005 WL 2089809, *4 (case dismissed for lack of subject matter). USDA also cites to an administrative case discussion when a non-handler by virtue of "acquiring" raisins, becomes a "handler" subject to the regulations of the Raisin Marketing Order. *See In*

13

*Re Marvin D. Horne and Laura R. Horne, dba Raisin Valley Farms, et al.*, AMAA Docket No. 04-0002, 67 Agric. Dec. \_\_, 2008 WL 1744490, *11-12 (Apr. 11, 2008).[4] USDA concludes that both judicial and administrative cases have already addressed the issue of whether non-handlers, such as customers or suppliers, can obtain the same inspections as handlers.

Plaintiff Lion argues that the interpretation of the Raisin Marketing Order that growers and buyers could not request such qualifying inspections first arose in December 2004 when the Raisin Administrative Committee stated in a letter that Lion, as the handler, was the only entity that could request inspections, and could not have been included in the November Petition of 2004. Counsel also argued this issue at oral argument on February 25, 2008. *See* 2/25 Hr'g Tr. Lion argues that the Judicial Officer did not address the underlying merits of this

---

[4] **A handler becomes a "first handler" when he "acquires" raisins, a term specifically and plainly defined by the Raisin Order...7 C.F.R. § 989.17.
The 1949 recommended decision, which was adopted as part of the Secretary of Agriculture's final decision, explained the language employed and clarified that: The term "acquire" should mean to obtain possession of raisins by the first handler thereof. The significance of the term "acquire" should be considered in light of the definition of "handler" (and related definitions of "packer" and "processor"), in that the regulatory features of the order would apply to any handler who acquires raisins. Regulation should take place at the point in the marketing channel where a handler first obtains possession of raisins, so that the regulatory provisions of the order concerning the handling of raisins would apply only once to the same raisins...." 2008 WL 1744490, *11-12.**

issue.  The difference is the November Petition addressed solely who should "perform" the inspections (*i.e.* USDA, the Dried Fruit Association, or Lion).  In comparison, the February Amended Petition describes that claim and the claim re "who can cause" an inspection (*i.e.* Lion, producers and/or growers).  Plaintiff argues that the claims are not the same and *res judicata* does not apply.

Lion however, as USDA argues, is seeking to get around the inspection requirements and have the same provisions interpreted.  Whether Lion argues the performance of the inspections by a non-USDA party, or whether it argues that another party, non-handler, can "cause" an inspection, the result is the same, to authorize independent third parties to be involved in the inspection process to absolve Lion from any USDA inspections.  The same provisions are being challenged, § 989.58(d) and 989.59(d).  All Lion's claims concerning these inspection regulations are barred by *res judicata* as they could have been raised.  The law does not countenance parsing of claims to divide into varieties that permit serial reassertions of related claims. As the March 20 Order specifies:  "Under the doctrine of res judicata, a final judgment on the merits precludes the parties from relitigating claims which were or could have been raised in that action." *Amaro v. Continental Can Co.*, 724 F.2d 747, 749 (9th Cir. 1984)(citing *Nevada v. United States,* 463 U.S. 110, 103 (1983)). This variation of the inspection services claim, could have been alleged in the November Petition.  Plaintiff also has not shown any "new or different facts or circumstances claimed to exist which did not exist or were not shown upon such prior motion" nor

15

**shown other grounds to grant its motion for reconsideration pursuant to Local Rule 78-230(k).**

**Plaintiff Lion's motion to amend the judgment and motion for reconsideration are DENIED.**

## CONCLUSION

**For the reasons set forth above, Plaintiff's motion to amend the judgment and motion for reconsideration are DENIED.**

IT IS SO ORDERED.

**Dated:   July 11, 2008**                         /s/ Oliver W. Wanger
                                          UNITED STATES DISTRICT JUDGE